No. 21474.

CHARLES C. HAWKINS, BETTY HAWKINS, GEORGE ED DEAHL,
ET AL. *v.* JOE CLINE, GEORGE REYER, JACK SNIFF, ET AL.
(420 P.2d 400)

Decided November 28, 1966

HASTINGS & CHISEN, DONALD D. PFEIFER, for plaintiffs in error.

JOHN W. LENTZ, for defendants in error.

*En Banc.*

MR. JUSTICE McWILLIAMS delivered the opinion of the Court.

THIS controversy arises out of the reorganization of certain school districts in Bent County. The particular school districts with which we are here concerned are two in number, namely Lakeview School District Num-

ber 8, hereinafter referred to as the Lakeview School District, and McClave School District Number RE-2, hereinafter referred to as the McClave School District.

The McClave School District was formed pursuant to "The School District Organization Act of 1957." 1960 Perm. Supp. C.R.S. 123-25-1, et seq. More specifically, at a special election, as called for by 1960 Perm. Supp., C.R.S. 123-25-18, a majority of the taxpaying electors on August 21, 1961, voted "for" a plan of organization whereby, among other things, the McClave School District came into being. A part of the plan thus approved by the qualified electors on August 21, 1961, consolidated the "old" Lakeview School District into and with the "new" McClave School District.

This particular plan calling for the reorganization of school districts within the county of Bent contained, among other things, the following provisions:

"The liabilities and contractual obligations of the old districts comprising the new district shall be the liabilities and obligations of the new district"; and

"The board of education of McClave School District No. Re-2 shall provide for the maximum utilization of the existing facilities. Before closing or abandoning any school building or facility, the board of education shall seek the concurrence of the parents of the children of the service area of the building or facility. Use of abandoned facilities for community centers or other community purposes shall be given full consideration. Sale of abandoned facilities, when such sale is deemed advisable, shall be accomplished as provided by law."

On February 10, 1964, the Board of Directors of the McClave School District passed a resolution closing the school situated within the geographical confines of the "old" Lakeview School District. In March of that same year the Board by appropriate vote refused to reconsider its earlier determination to close the particular school in question, and it was this action of the Board which apparently triggered the present controversy.

In any event, on November 4, 1964, Hawkins and some sixty-four other persons, all of whom were described in the complaint as "taxpayers and patrons" of the McClave School District as well as persons who were "residents, citizens, property owners, taxpayers and patrons" of that territory which was formerly a part of the "old" Lakeview School District, instituted for themselves and all other persons similarly situated the present action. Named as defendants were Joe Cline, George Reyer, Jack Sniff, Dan Sniff and Francis Travis as the Board of Directors of the McClave School District.

The action was one in which the plaintiffs sought injunctive relief only. Specifically, they requested that the Board of Directors of the McClave School District be *enjoined* from "closing and abandoning the school building and facilities of the former Lakeview School District No. 8"; that the Board be *ordered* to continue the operation of this school; and that the Board be *commanded* to "rehire" the teachers and personnel of the school. Also, the plaintiffs sought a further order of court *directing* the Board of Directors to pass a resolution whereby the McClave School District would "assume" the liabilities and contractual obligations of the erstwhile Lakeview School District.

In their complaint the plaintiffs set forth the background material which has been summarized above. In addition, it was also alleged in the complaint that in 1953 the Lakeview School District purchased from the United States of America 8.6 acres of land, together with the building and improvements situate thereon, and that the deed conveying the property to the school district contained a provision that the property in question had to be used for educational purposes for a period of twenty years, or it would revert to and become the property of the United States of America, "at its option." It is further alleged that the Lakeview School District had issued bonds in the principal sum of $30,000 to improve the real property thus purchased from the

United States of America, and that there was then due and owing on this bond issue the principal sum of $9,000, plus interest. It is this bonded indebtedness which the plaintiffs allege should and under the plan of organization must be assumed by the McClave School District.

From the complaint it is further learned that the Board of Directors of McClave School District in closing the Lakeview school proposed to bus the children of this particular area to the McClave school, a distance of some eleven miles.

In response to this complaint the named defendant, namely the Board of Directors of the McClave School District, filed a motion to dismiss, contending that the complaint failed to state a claim upon which relief could be granted. After argument, the trial court granted the motion to dismiss, and the judgment of dismissal followed. By writ of error the plaintiffs seek a reversal of the judgment of the trial court dismissing their complaint.

At the outset, it should be noted that the plaintiffs do not seek to have the reorganization and the consolidation of the Lakeview School District with the McClave School District set aside or in any other manner invalidated. Rather, the import of the complaint is that the Board of Directors of the McClave School District has failed to "live up" to certain provisions of the "plan," the particular provisions with which we are here concerned having been set forth above. It was in connection therewith that the plaintiffs sought mandatory injunctive relief against the Board of Directors of the McClave School District.

As already noted, the trial court dismissed the complaint on the ground that it failed to state a claim upon which relief could be granted. All things considered, we are of the view that in so doing the trial court committed no error.

The central issue in the case concerns the pre-election plan of organization and its effect upon the

Board of Directors of the McClave School District. In other words, is the Board obligated to follow the provisions of the pre-election plan, when to do so would be in violation of its duties as such are defined by the applicable statutes and constitutional provisions? Or, in perhaps simpler form, does a provision in a pre-election plan of organization take precedence over a statute or provision of our state constitution? In our view of this matter the plan simply does not, and cannot, supersede any applicable statutes or constitutional provisions.

■ Chapter 208, section 3 of the Session Laws of 1961 became effective on March 23, 1961, and hence was in force on the date of the aforementioned special election which was held on August 21, 1961. That particular legislative enactment now appears as C.R.S. 1963, 123-25-44, and it provides, in essence, that before the bonded indebtedness of an "old" school district *may* be assumed by the "new" school district, the Board of Directors of the new district must first decide by a majority vote to submit the issue of assuming such bonded indebtedness to the qualified voters of the "new" district. Furthermore, the election at which the issue of assuming existing bonded indebtedness is to be voted upon is described in the statute as the "regular biennial school election held for the purpose of electing school directors of said new district." In other words, the issue is to be voted upon at a general school election, as opposed to any special election called for the special purpose of determining whether there is even going to be any school reorganization.

From the foregoing it is quite evident to us that the statutes spell out quite clearly just how a "new" school district may assume the bonded indebtedness of an "old" school district. In short, it takes a majority vote of the Board of Directors of this new district, plus a majority vote of the qualified electors at the next general school election. And in this regard nothing in a plan of organi-

zation can in anywise alter or change the procedure thus prescribed in the statute.

As noted, the Board may, or may not, decide to submit the issue of assuming existing bonded indebtedness to the qualified electors. In other words, it has a discretion, and in such case mandamus ordinarily does not lie to "control the discretion of a public official." *Keefe Manufacturing & Investment Company v. Board of Education*, 33 Colo. 513, 81 Pac. 257.

Similarly, Article IX, section 15 of the Colorado constitution provides that the "directors shall have control of instruction in the public schools of their respective districts." The resolution to close the school facilities in the former Lakeview School District was adopted by the Board on February 10, 1964. Chapter 233, section 3, of the Session Laws of 1963, effective July 1, 1963, provides, in part, as follows:

"Every school board, unless otherwise especially provided by law, shall have the *power*, and it shall be their *duty* * * * * (22) to determine which schools within the district shall be maintained and operated * * * *." (Emphasis supplied.)

Clearly, then the Board of Directors of the McClave School District is clothed with the "power" and is charged with the "duty" to determine just which schools shall be maintained and operated within the district. This, then, being the case, the Board before closing the Lakeview school need not obtain or even seek to obtain the approval of the residents of the "old" Lakeview School District, notwithstanding any reference thereto in the plan of organization. To hold otherwise would simply mean that the plan of organization would override both statutory and constitutional provisions.

As regards the request of the plaintiffs that the Board be compelled to rehire the teachers of the school situate in the "old" Lakeview School District, the trial court ruled that the plaintiffs had no standing to raise this particular matter. We find no error in this regard.

None of the plaintiffs were teachers or personnel of the school which was being closed by the Board. For any possible breach of contract, there exists an adequate remedy at law, which in itself would negate any need for any equitable relief. Mandamus will not issue in "doubtful" cases, but only where the duty sought to be enforced is clear and where no other specific and adequate mode of relief is available. *Potter v. Anderson,* 155 Colo. 25, 392 P.2d 650.

A situation which is somewhat analogous to the instant one is found in *State ex rel. Phillips v. Trent Independent School District,* 141 S.W.2d 438, (Tex. Civ. App.). In that case there was apparently some sort of a "pre-election agreement" that a school in a particular area would be kept open. Subsequently, the trustees of the school district ordered that the school in question be closed. Certain individuals as "taxpayers and citizens" then sought to enjoin the trustees from closing the school. In rejecting this claim for relief the Court of Civic Appeals of Texas held that the pre-election agreement or understanding was not a "contract" to which the school district was a party and that court then went on to declare as follows:

"Persons acting upon such agreement were, as a matter of law, we think, charged with notice that the powers of the trustees were conferred by law for public purposes, and the exercise thereof, involving, as it does, a matter of future policy, properly subject to change to meet changing conditions, could not be restricted by an agreement of the nature of the one here involved."

The judgment is affirmed.

MR. JUSTICE DAY not participating.